# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL A. DIPIPPA and MARY JANE DIPIPPA** *individually and as the parents and natural guardians of J.D., a minor* | ) ) ) |
| | ) **2:11-cv-7** |
| **Plaintiffs,** | ) ) |
| | ) |
| **v** | ) ) |
| **UNION SCHOOL DISTRICT**, **LARRY BORNAK** *Superintendent of the Union School District*, **STEPHEN SHUTTERS** *Principal of the Union High School* and **SCOTT KINDEL** *Athletic Director of the Union High School* | ) ) ) ) ) ) ) ) |
| **Defendants.** | ) ) |

## <u>MEMORANDUM OPINION AND ORDER OF COURT</u>

Pending now before the Court is the MOTION TO DISMISS filed by Defendants Union School District, Larry Bornak, Stephen Shutters, and Scott Kindel, Doc. No 9, with brief in support, Doc. No. 10, and PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, Doc. No. 11.

Plaintiffs Michael Dipippa and Mary Jane Dipippa, in their individual capacities, and as parents and natural guardians of their minor daughter, J.D., initiated this action on January 4, 2011, with the filing of a three count complaint against Defendants. Counts I and II are alleged against Defendant Union School District, with Count I alleging a civil rights violation claim brought under section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and Count II alleging a claim under Title IX of the Civil Rights Act of 1964, 20 U.S.C. §§ 1681, *et seq. See* Doc. No. 1. Count III alleges a section 1983 claim against the individual Defendants. The claims generally stem from the period beginning during the 2009 – 2010 academic school year

and continue through September of 2010.  Plaintiffs claim that throughout that period, J.D., a minor female student at Union High School, was allegedly sexually assaulted by Alan Lynn Pryor, a former teacher and coach at the high school.  *Id.*  Alan Lynn Pryor committed suicide on September 4, 2010.  *Id*.

## I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires that a pleading which "states a claim for relief must contain .... (2) a short and plain statement of the claim showing that the pleader is entitled to relief."  The Rule further provides that "[e]ach allegation must be simple, concise, and direct" but "[n]o technical form is required."  Fed.R.Civ.P. 8(d).  "The touchstone of Rule 8(a)(2) is whether a complaint's statement of facts is adequate to suggest an entitlement to relief under the legal theory invoked and thereby put the defendant on notice of the nature of the plaintiff's claim."  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 2010 U.S.App. LEXIS 17107, *45-*46, n. 18 (3d Cir. Aug.16, 2010) ("Brokerage Antitrust"), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 565, n. 10, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

In the aftermath of *Twombly* and the decision in *Ashcroft v. Iqbal*, 556 U.S. ---, ---, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), and the interpretation of those two cases by the United States Court of the Appeals for the Third Circuit in a series of precedential opinions, the pleading standards which allow a complaint to withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) have taken on slightly new parameters.  Beginning in *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir.2008), the Court of Appeals noted, "After *Twombly*, 'it is no longer sufficient to allege mere elements of a cause of action;' instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'"  *Phillips*, 515 F.3d at 233, *quoting Twombly*, 550 U.S. at 563, n. 8 (alteration in original.)  In its next important case to address the standard for

motions to dismiss, *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir.2009) the Court of

Appeals noted that following *Twombly* and *Iqbal*, conclusory "bare-bones" allegations that "the

defendant unlawfully harmed me" no longer suffice. A civil complaint must now include

"sufficient factual matter to show that the claim is facially plausible." *Fowler*, 578 F.3d at 210;

*see also Twombly*, 550 U.S. at 555, holding that a complaint which offers only "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action will not do." The

*Fowler* court further directed that:

> after *Iqbal*, when presented with a motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis. First, the factual and legal
> elements of a claim should be separated. The District Court must accept all of the
> complaint's well-pleaded facts as true, but may disregard any legal conclusions.
> Second, a District Court must then determine whether the facts alleged in the
> complaint are sufficient to show that the plaintiff has a plausible claim for relief.
> In other words, a complaint must do more than allege the plaintiff's entitlement to
> relief. A complaint has to show such an entitlement with its facts. As the
> Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit
> the court to infer more than the mere possibility of misconduct, the complaint has
> alleged-but it has not shown-that the pleader is entitled to relief."

*Fowler*, 578 F.3d at 210-211 (quotations and citations omitted.)

Thus, the current formulation of the standard of review for a motion to dismiss under

Rule 12(b)(6) requires the court to determine if the plaintiff's claims are "plausible." "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at

1949; *see also Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir.2009);

*Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir.2010); and *Bob v. Kuo*, No. 10-1615, 2010

U.S.App. LEXIS 14965, *4 (3d Cir. July 20, 2010). "[W]hat suffices to withstand a motion to

dismiss necessarily depends on substantive law and the elements of the specific claim asserted."

*Brokerage Antitrust*, 2010 U.S.App. LEXIS 17107 at *46, n. 18. "Determining whether a

complaint states a plausible claim for relief will ... be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Brokerage Antitrust*, *id.* at \*177, *quoting Iqbal*, 129 S.Ct. at 1950.

The Third Circuit's latest summation of the standard is that "[w]e must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, but we require more than mere assertions devoid of further factual enhancement." *Dawson v. Frias*, CA No. 10-2200, 2010 U.S.App. LEXIS 21278, \*2 (3d Cir. Oct. 14, 2010) (internal citations and quotations omitted.) "The assumption of truth does not apply, however, to legal conclusions couched as factual allegations or to '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Bamigbade v. State Farm Mut. Auto. Ins. Co.*, Nos. 09-3868 and 09-4229, 2010 U.S.App. LEXIS 17033, \*3-\*4, 2010 WL 3096035 (3d Cir. Aug. 9, 2010), *quoting Iqbal*, 129 S.Ct. at 1949. "A complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. The Supreme Court's formulation of the pleading standard in *Twombly* does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *McTernan v. City of York*, 564 F.3d 636, 646 (3d Cir.2009) (internal quotations omitted.)

## II. LEGAL ANALYSIS

Defendants present various arguments with respect to each count of Plaintiffs' complaint, the combination of which, if granted, would result in the dismissal of the complaint in its entirety. *See generally* Doc. No. 9. In view of the fact that Defendants advance two somewhat overlapping arguments directly challenging Count I, the 1983 action against Defendant School District, and three relatively distinct arguments seeking dismissal of other aspects of the complaint, the Court will address each argument in sequence.

**1. Defendant School District's Motion to Dismiss Count I, the 1983 action.**

The Court begins with two arguments of Defendant School District, the sole party against which Count I is brought, that essentially move to dismiss Count I for the failure to state a claim upon which relief can be granted. As noted above, Counts I and III are brought under 42 U.S.C. § 1983, which provides a cause of action to:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ...

42 U.S.C. § 1983. To prevail under 42 U.S.C. § 1983, a plaintiff must prove a deprivation of a constitutional or federal rights by a person acting under color of state law. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.1995). As it is undisputed that any of the named Defendants are state actors for the purpose of § 1983, the focus turns to whether the allegations support the existence of constitutional torts.

In Count I, Plaintiffs allege that Defendant School District violated their rights to substantive due process under the Fourteenth Amendment to the U.S. Constitution. Similarly, Count III of the complaint asserts a substantive due process claim against the individually named Defendants. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV.

Defendant School District's first argument turns upon the theory of recovery pursued by Plaintiffs for Count I. Generally, Defendant School District argues that it had no affirmative duty to protect J.D. from the alleged harm perpetrated by Pryor. *See* Doc. Nos. 9 and 10 (referencing *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1368- 69 (3d Cir 1992) and *DeShaney v. Winnebago County Dept. of Soc. Services*, 489 U.S. 189, 195

(1989)). As Defendant School District correctly notes, under *DeShaney*, the Due Process Clause does not generally impose upon the state an affirmative obligation to protect its citizens from harm inflicted by private individuals. While there is an exception to this general rule in cases in which a "special relationship" exists between an individual and the state, Defendant School District also notes that such a "special relationship" is not recognized between a school district and its students. *Id.* (citing *D.R.*, 972 F.2d at 1368-73). As an alternative argument, Defendant District moves to dismiss Count I for failing to allege that a policy, practice, or custom played an affirmative role in causing the sexual abuse of J.D., and that Plaintiffs have failed "to allege a factual basis to show a deliberate indifference towards the alleged abuse of J.D." Doc. No. 10 at 17-18.

Plaintiffs oppose both bases seeking dismissal. As to Defendant's argument that no "special relationship" exists between the School District and J.D., Plaintiffs contend that unlike the circumstances of *DeShaney*, here Defendant School District is liable because of its own actions, and not those taken by a third party non-state actor, specifically alleging that the District established and maintained a practice, custom or policy with a deliberate indifference to the consequences that resulted in a constitutional harm. *See* Doc. No. 11 (referencing *Stoneking v. Bradford Area School District*, 882 F.2d 720, 725 (3d Cir. 1989), *cert. denied*, 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990)(holding that a school district can be liable under section 1983 for the sexual abuse of a student by a teacher)). Further, as to the alternative argument, Plaintiffs contend that the complaint sets forth a factual basis for the claim of deliberate indifference.

Plaintiffs note the factual allegations set forth in their complaint that provide the factual basis for the claim of deliberate indifference to J.D.'s due process rights. *See* Doc. No. 11,

referencing Doc. No. 1 at ¶ 12 (alleging, *inter alia*, that teacher/coach Alan Pryor was under the direction of Defendant School District during the operative period); *id.* at ¶ 18 (alleging that Defendants Bornak and/or Shutters were approached by "several teachers" during the 2009-2010 school year and informed that "Pryor was spending an inordinate amount of time with minor J.D."); *id* at ¶ 19 (alleging that Defendant Kindel was placed on notice of the close relationship between Pryor and J.D., and that Defendant Kindel met with Pryor in either April or May of 2010 to discuss the situation); *id*. at ¶ 20 (that both before and after notice to officials with the Defendant School District, in May of 2010, Pryor engaged in open, notorious and obvious contact with J.D., such as, on one occasion, sitting on a school bus with her legs draped across his lap while returning from an athletic event, and on another occasion, allowing J.D. to sit on his lap during a student dance held at Union High School); *id*. at ¶ 21 (near the end of the 2009-2010 school year, Defendants Shutters and Bornak met with J.D. in the superintendent's office and stated that she should not go to Pryor's classroom any more, out of concerns brought to their attention by other teachers); *id*. at ¶ 22 (alleging that at the end of the 2009-2010 school year, Defendant Shutters called Plaintiff Mary Jane Dipippa and "advised her that the school had concerns about the relationship between Pryor and J.D., and that the school district was investigating the matter"); *id*. at ¶ 26 (alleging that during the summer of 2010, Defendants Shutters and Kindel attended weight lifting and conditioning sessions for the high school football team that were coordinated and supervised by Pryor, at times during which J.D. was also present at the invitation of Pryor); *id*. at ¶¶ 28-30 (alleging that J.D. would eat breakfast with the high school football coaches, including Pryor, prior to morning football practice sessions that started in August, 2010, and would then attend the practices); and *id*. at ¶ 31 (alleging that during several of the summer high school practices, Pryor left the practices with J.D., and escorted her

to his classroom inside the high school building and "engaged in an ongoing course of action of sexually abusing and sexually assaulting her").  According to Plaintiffs, these factual averments reflect that Defendant School District maintained a policy, practice, or custom of deliberate indifference regarding Alan Pryor's interaction with J.D. that caused, in part, Pryor's abuse of J.D.  *Id.*

It is well established that a municipality may be held liable under section 1983 for violations of constitutional rights caused by an official policy or custom of the municipality.  *See Monell v. Dep't of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  Such liability, however, requires more than a simple employment relationship between a municipality and the individual responsible for the rights violation.  Liability does not attach simply because the school district employed the wrongdoer.  *Monell*, 436 U.S. at 691.

In order for a school district to be liable pursuant to § 1983 for the sexual abuse of a student by one of its teachers, a plaintiff must show that the school district: (1) had a policy, practice, or custom which played an affirmative role in bringing about the sexual abuse, and (2) that the school district acted with deliberate indifference to that abuse.  *Black by Black v. Indiana Area School Dist.*, 985 F.2d 707, 712 (3d Cir. 1993).  In *Stoneking*, the United States Court of Appeals for the Third Circuit set forth the standard for determining whether a school district establishes a policy, practice, or custom that results in the kind of constitutional violation at issue here. "[A]lthough the mere failure of supervisory officials to act or investigate cannot be the basis of liability," school officials may not "maintain a custom, practice or usage that communicate[s] condonation or authorization of assaultive behavior."  *Stoneking*, 882 F.2d at 730.

Additionally, a plaintiff must establish that a supervisory official or final policy maker of the school district, with actual knowledge of similar conduct in the past, acted with deliberate indifference in response thereto. *See Gottlieb v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 176 (3d Cir.2001). The courts have noted three scenarios in which a government employee's actions, or in this case, school district employee's, actions may be deemed to be the result of a policy or custom of the entity that subjects the school district to § 1983 liability: (1) when an appropriate officer or entity promulgates a statement of policy and the employee's act is an implementation of that policy; (2) when the act of the policymaker violates federal law; and (3) when a policymaker fails to act affirmatively despite the obvious need for action to control agents of the government. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir.2003).

As the complaint does not identify a specific statement of policy by the District, Plaintiffs' 1983 claim against Defendant School District appears to implicate the third scenario. Plaintiffs allege a number of occurrences and interactions involving faculty members, the individually named Defendants acting on behalf of the School District, minor J.D., Alan Pryor, and Plaintiff mother that, at a minimum, clearly and explicitly allege a degree of notice on the part of school officials of some kind of relationship between Pryor and J.D. that raised official concern, all of which preceded the sexual abuse alleged to have occurred at the beginning of the 2010-2011 school year. Additionally, Plaintiffs allege acts of open and obvious physical contact between Pryor and J.D. at school functions. Plaintiffs allege that Defendant Kindel met with Pryor to discuss the concerns raised by other faculty members regarding Pryor and J.D. Plaintiffs allege that Defendants Shutters and Bornak met with J.D. toward the end of the 2009-2010 school year to specifically discuss the situation and to direct J.D. not to go to Pryor's classroom anymore. Plaintiffs allege that Defendant Shutters called Plaintiff mother and

informed her of the concerns toward the end of the 2009-2010 school year, and further advised

her that the Defendant School District is investigating the matter.  In spite of these occurrences,

Plaintiffs allege that the contact between Pryor and J.D. continued throughout the summer and

was known by School District officials.  Plaintiffs have sufficiently pled a custom, practice, or

policy of deliberate indifference that may have played a part in bringing about the constitutional

deprivation suffered by minor J.D.

The Court's analysis does not stop there, however.  Liability under § 1983 must stem

from policy making authority.  Only an individual with final decision-making authority can make

official policy on behalf of the school district.  *See Pembauer v. City of Cincinnati*, 475 U.S. 469,

483-84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).  "[I]n order to ascertain who is a policy maker a

court must determine which official has final, unreviewable discretion to make a decision or take

action." *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir.1996).  Whether a person has final

decision-making authority is a question of state law.  *McGreevy v. Stroup*, 413 F.3d 359, 368 (3d

Cir.2005);  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598

(1989);  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).  A

single decision by an individual with policy making authority may be sufficient to impose

liability on the school district.  *See Pembaur*, 475 U.S. at 480 (stating that "it is plain that

municipal liability may be imposed for a single decision by municipal policymakers under

appropriate circumstances");  *McGreevy*, 413 F.3d at 367-68.  At the same time, however, not

every decision by an officer subjects a school district to liability.  "[School district] liability

under § 1983 attaches where - and only where - a deliberate choice to follow a course of action is

made from among various alternatives by the official or officials responsible for establishing

final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483.  If an

employee's action is subject to discretionary review, the employee is not a final policymaker under § 1983. *Brennan v. Norton*, 350 F.3d 399, 428 (3d Cir.2003).

The final policy maker for a school district in Pennsylvania is typically the school board or the superintendent. *See* 24 Pa. Cons.Stat. Ann. §§ 5-508, 5-510, 5-514, 10-1081(superintendent duties); *McGreevy*, 413 F.3d at 369. In this case, Plaintiff attributes to Defendant School District a "custom, practice, and/or policy of deliberate indifference to and/or concealment of instances of known improper contacts and relationship by Pryor with J.D. and known sexual assaults upon and abuse of J.D. by Pryor" by way of specific actions, or inactions, taken by the District superintendent (Defendant Bornak), the high school principal (Defendant Shutters), and the athletic director for the high school (Defendant Kindel). Doc. No. 1 at ¶¶ 41-42. In view of the facts as pled, the complaint provides sufficient notice to Defendant School District for the purpose of its motion to dismiss. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (holding that notice pleading is sufficient for suits against local governments pursuant to § 1983); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (holding that notice pleading is the standard under the Federal Rules of Civil Procedure unless a specific statutory provision compelling heightened pleadings). Along those same lines, the Court makes clear that it is not making a finding at this stage of the proceeding that the facts actually rise to the level of deliberate indifference; only that Plaintiff has sufficiently stated a claim and will be allowed to proceed with discovery.

At this juncture, the Court agrees with Plaintiffs that it has stated a cause of action against Defendant School District in Count I. Furthermore, the Court finds that Count I does not aver a

"special relationship" theory of liability under *DeShaney*. Count I is clearly analogous to that of

*Stoneking*, wherein the Court of Appeals for the Third Circuit held:

> Nothing in *DeShaney* suggests that state officials may escape liability arising from their policies maintained in deliberate indifference to actions taken by their subordinates. As the Supreme Court recently reconfirmed in *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989), a municipality may be liable under section 1983 where its policymakers made "a deliberate choice to follow a course of action ... from among various alternatives," (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483-84, 106 S.Ct. 1292, 1300-01, 89 L.Ed.2d 452 (1986) (plurality op.)), and the policy chosen "reflects deliberate indifference to the constitutional rights of [the city's] inhabitants," 109 S.Ct. at 1206. *See also Monell*, 436 U.S. at 690-91, 98 S.Ct. at 2036-37 (government body may be sued for constitutional deprivations visited pursuant to governmental "custom," "practices" or "usage").

> This is an independent basis for liability previously pled and preserved by Stoneking which is unrelated to the issue decided in *DeShaney*. Liability of municipal policymakers for policies or customs chosen or recklessly maintained is not dependent upon the existence of a "special relationship" between the municipal officials and the individuals harmed. (citation omitted).

882 F.2d at 725. The Court has little difficulty in finding that Plaintiffs have adequately pled an

independent basis for liability attributable to Defendant School District. Accordingly,

Defendants' motion to dismiss in this regard will be denied.

### 2. Claims brought by Plaintiff parents in their individual capacities

Defendants move to dismiss the claims for damages of Plaintiff parents individually.

According to the complaint, "As a direct and proximate result of the customs, practices and/or

policies of the Union School District, Michael A. Dipippa and Mary Jane DiPippa have been

required to provide medical treatment and counseling for J.D. and have been required to pay fees

associated with such treatment and counseling." Doc. No. 1 at ¶¶ 51 & 74. Defendants argue

that the claims brought by Plaintiff parents in their individual capacities should be dismissed

because the harm alleged is not a deprivation of a constitutionally or federally recognized right.

Doc. Nos. 9 & 10. More specifically, Defendants contend that the individual claims brought by

Plaintiffs are essentially impermissible attempts to recover for the deprivation of the civil rights of a third party, namely their daughter. *See* Doc. No. 12 at § V.B. (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) for the general proposition that, to successfully assert a cause of action under § 1983, "the plaintiff must allege some person has deprived him of a federal right.")

Although styled as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, Defendants' challenge that Plaintiffs have suffered no remediable harm is technically an attack on this Court's subject matter jurisdiction and would more properly be brought pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir.2007). Because Defendants have raised the issue, the Court will treat it as one raised pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Garcia v. Richard Stockton Coll. of N.J.*, 210 F.Supp.2d 545, 548 (D.N.J.2002) (treating defendant's motion to dismiss as one brought pursuant to Federal Rule of Civil Procedure 12(b)(1), despite defendant's description of motion as one being brought pursuant to Federal Rule of Civil Procedure 12(b)(6)).

Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party. *See Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir.2003). On a motion to dismiss for lack of standing, a plaintiff "'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir.1996) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

However, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561.

Federal Rule of Civil Procedure 17(c) permits a guardian, as a representative, to sue on behalf of a minor. Defendants do not dispute Plaintiffs' ability to bring the action on behalf of their minor daughter, J.D. Instead, Defendants challenge Plaintiffs' ability to recover fees and expenses allegedly incurred by them on behalf of J.D. as part of J.D.'s medical treatment and counseling. The question, therefore, is one of damages, and the nature of recompense, if any, is recoverable under § 1983 for injuries caused to a plaintiff by the deprivation of her constitutional rights. The Supreme Court has previously addressed this question:

> Rights, constitutional and otherwise, do not exist in a vacuum. Their purpose is to protect persons from injuries to particular interests, and their contours are shaped by the interests they protect.

> Our legal system's concept of damages reflects this view of legal rights. "The cardinal principle of damages in Anglo-American law is that of *compensation* for the injury caused to plaintiff by defendant's breach of duty." 2 F. Harper & F. James, Law of Torts § 25.1, p. 1299 (1956) (emphasis in original)… The Court implicitly has recognized the applicability of this principle to actions under § 1983 by stating that damages are available under that section for actions "found … to have been violative of … CONSTITUTIONAL RIGHTS AND TO HAVE CAUSED COMPENSABLE INJURY … ." *Wood v. Strickland*, 420 U.S., at 319, 95 S.Ct., at 999 (emphasis supplied); *see Codd v. Velger*, 429 U.S. 624, 630-631, 97 S.Ct. 882, 885-886, 51 L.Ed.2d 92 (1977) (Brennan, J., dissenting); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 232, 90 S.Ct. 1598, 1641, 26 L.Ed.2d 142 (1970) (Brennan, J., concurring and dissenting); *see also Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 397, 91 S.Ct. 1999, 2005, 29 L.Ed.2d 619 (1971) (action for damages directly under Fourth Amendment); *id.*, at 408-409, 91 S.Ct., at 2010-2011 (Harlan, J., concurring in judgment). The lower federal courts appear generally to agree that damages awards under § 1983 should be determined by the compensation principle….

> The Members of the Congress that enacted § 1983 did not address directly the question of damages, but the principle that damages are designed to compensate persons for injuries caused by the deprivation of rights hardly could have been foreign to the many lawyers in Congress in 1871. … Two other sections of the Civil Rights Act of 1871 appear to incorporate this principle, and no reason suggests itself for reading § 1983 differently. … To the extent that Congress intended that awards under § 1983 should deter the deprivation of constitutional

rights, there is no evidence that it meant to establish a deterrent more formidable than that inherent in the award of compensatory damages. *See Imbler v. Pachtman*, 424 U.S., at 442, 96 S.Ct., at 1000-1001 (White, J., concurring in judgment). …

*Carey v. Piphus*, 435 U.S. 247, 254-255, 98 S.Ct. 1042, 1047-48, 55 L.Ed.2d 252

(1978)(footnotes 7, 8, 9, and 10 omitted).  The Supreme Court further noted "[i]n order to further

the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of

constitutional rights should be tailored to the interests protected by the particular right in

question[.]" *Id*. at 259, 98 S.Ct. at 1050.  In that regard, the ability to pursue a claim for past and

future medical expenses incurred or to be incurred by parents in the care of their minor child is

well-settled law.  *See, e.g., Brough v. Strathmann Supply Co.*, 358 F.2d 374, 378 (3d Cir. 1968);

*Fields v. Graff*, 784 F.Supp. 224 (E.D. Pa. 1992); *Olivieri v. Adams*, 280 F.Supp. 428 (E.D.

Pa.1968); *see also, Meisel v. Little*, 407 Pa. 546, 180 A.2d 772 (1962); *Brower by Brower v. City

of Philadelphia*, 124 Pa.Cmwlth. 586, 557 A.2d 48 (Pa. Cmwlth. 1989).

At the same time, however, Defendants' concern is not wholly without application here.

A parent's ability to seek compensation for past and future medical expenses incurred in the care

of a minor child does not further provide an independent cause of action for the parents' own

claims of injuries given the facts as pled within the complaint.  Defendants note that a parent's

ability to recover damages with their own independently pled section 1983 claim stemming from

constitutional deprivations suffered by minor children is limited to those situations involving the

death of a child or the termination of parental rights.  Doc. No. 10 (referencing *Tilson v. Sch.

Dist. Of Philadelphia*, No. 89-1923, 1989 WL 127510 (E.D. Pa 1989)); *see also*, *Estate of Bailey

v. County of York*, 768 F.2d 503, 509 (3d Cir 1985).  The Third Circuit has cautioned against

extending the right to recover beyond those parameters, *see McCurdy v. Dodd*, 352 F.3d 820,

829 (3d Cir 2003)(refusing to extend a right of action under section 1983 to a parent whose adult

son was killed by police officers and "hestitat[ing] to extend the Due Process Clause to cover official actions that were not deliberately directed at the parent-child relationship."), and that such a right has not been extended to a parent whose child had been molested by a public school employee as the facts were pled here. *Cf., H.T. by S.T. v. East Windsor Regional School District*, No. 04-1633, 2006 WL 3246543 (D.N.J. 2006). The Court notes that Plaintiffs do not make any demand for such damages, and, had they done so, the outcome of the motion in this particular regard may well be different. Nevertheless, the Court finds that Plaintiffs have averred general factual allegations sufficient to have standing to pursue their claims against Defendant School District in their individual capacities for reimbursement of medical treatment expenses for their daughter's injuries, and Defendants' motion to dismiss in this regard will be denied.

At this juncture, the Court finds the same reasoning to hold in terms of Plaintiffs' demand for damages under Count II, the claim brought under Title IX. Generally speaking, parents of a student whose rights were violated do not have standing to assert personal claims under Title IX, but do have standing to assert claims on the student's behalf. *Accord., Haines v. Metropolitan Government of Davidson County, Tenn.*, 32 F.Supp.2d 991 (M.D. Tenn. 1998); *Doe v. Londonderry School Dist.*, 970 F.Supp. 64 (D.N.H. 1997); *Franks v. Kentucky School for the Deaf*, 956 F.Supp. 741 (E.D. Ky. 1996); *Burrow By and Through Burrow v. Postville Community School Dist.*, 929 F.Supp. 1193 (N.D. Iowa, 1996). On its face, the statutory language of Title IX, 20 U.S.C. § 1681 *et seq.*, applies only to students and participants in educational programs. Plaintiffs do not allege that they are either in this case, and therefore, they do not have standing to pursue personal claims. The Court finds, however, that Plaintiff parents do have standing to pursue the reimbursement for expenses of medical treatment and counseling of J.D. as a result of the alleged deprivation of rights under Title IX.

### 3.   Count II against Defendant School District brought under Title IX

Title IX of the Education Act of 1972 proscribes discrimination, exclusion, or denial of benefits on the basis of sex in educational institutions or programs which receive federal funding. 20 U.S.C. § 1681 ("No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]").  Defendant School District does not dispute that it is the recipient of federal funding.

Title IX encompasses sexual harassment of a student by a teacher and is enforceable through an implied private right of action for damages against a school district.  *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 75-76, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992); *see also*, *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). Similar to 1983 claims, the Supreme Court has rejected a respondeat superior basis for liability. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998).  To succeed on a Title IX sexual harassment claim, a student must show: (1) quid pro quo sexual harassment, or a sexually hostile educational environment; (2) actual notice by an "appropriate person" who has the authority to take corrective measures; and, (3) a response to the harassment that amounts to deliberate indifference.  *Bennett v. Pa. Hosp. Sch. of Nurse Anesthesia*, No. Civ.A. 01-CV-4098, 2002 WL 32341792 at *3 (E.D.Pa.Oct.29, 2002) (citing *Gebser*, 524 U.S. at 291-92).  An "appropriate person" is "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the ... [district's] behalf."  *Id.* at 290, 118 S.Ct. 1989.  "Actual notice" must amount to "actual knowledge of discrimination in the recipient's programs."  *Id.*  It is important to note that knowledge of the mere possibility of harassment is insufficient to constitute awareness, but an

appropriate person need not be absolutely certain that harassment has occurred in order to satisfy the knowledge requirement. *See Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F.Supp.2d 332, 367 (W.D. Pa. 2008) (citing *Bostic v. Smyra Sch. Dist.,* 418 F.3d 355, 360 (3d Cir. 2005)). "An educational institution has 'actual knowledge' if it knows the underlying facts, indicating sufficiently substantial danger to students, and was therefore aware of the danger." *Bostic*, 418 F.3d at 361 (quoting 3C Fed. Jury Prac. & Instr. § 177.36 (5th ed.2001)). Further, "the response must amount to deliberate indifference to discrimination.... The premise, in other words, is an official decision by the recipient not to remedy the violation." *Id.*

Based upon the factual averments alleged within the complaint, the Court finds that Plaintiffs have sufficiently pled a Title IX cause of action against Defendant School District. Plaintiffs have sufficiently averred that numerous officials, namely the superintendent, the high school principal, and the athletic director, had actual notice of Pryor's inappropriate interactions with J.D., and that the interactions continued after such notification. Whether the facts rise to the level of deliberate indifference on the part of these officials cannot be decided at this stage of the action. Nevertheless, the allegations are sufficient to allow Plaintiffs to proceed to discovery. Whether they will prove true, or legally sufficient based on the facts as they are discovered, is a question for another day. Defendant School District's motion to dismiss Count II, the Title IX count, will be denied.

### 4.   Count III against Individual Defendants

Defendants move to dismiss Count III, the 1983 action against the individual Defendants, on the basis that it is duplicative of Count I, the section 1983 action against the District. Defendants contend that a claim against a government employee in an official capacity is tantamount to a claim against the governmental entity that employs the employee. In opposition,

Plaintiffs claim that the alleged conduct is sufficient to state a claim against the individual Defendants in their individual capacities. Doc. No. 11.

Personal-capacity suits seek to impose personal liability upon a government official for actions he/she takes under color of state law. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Scheuer v. Rhodes*, 416 U.S. 232, 237-238, 94 S.Ct. 1683, 1686-1687, 40 L.Ed.2d 90 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell*, *infra,* 436 U.S. at 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611. On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. *See, e.g.*, *Graham*, 473 U.S. at 166. More is required, however, in an official-capacity action in order for a governmental official to be liable under § 1983. Liability attaches only when the entity itself is a "'moving force'" behind the deprivation. *Id.* (quotations omitted). In other words, in an official-capacity suit, the entity's "policy or custom" must have played a part in the violation of federal law. *Monell*, *supra*; *Oklahoma City v. Tuttle*, 471 U.S. 808, 817-818, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985); *id.*, at 827-828, 105 S.Ct., at 2437, 2438 (Brennan, J., concurring in judgment). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983". *Monell*, *supra.*, at 694.

In terms of the availability of defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as

objectively reasonable reliance on existing law. *See, e.g., Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (absolute immunity); *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (qualified immunity); *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (same). In an official-capacity action, however, these defenses are not available. *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *see also Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). Additionally, punitive damages are not available under § 1983 from a municipality, *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), but are available in a suit against an official personally, *see Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983).

Plaintiffs' complaint does not explicitly assert the capacity in which the causes of actions are brought against the individual Defendants, but that, in and of itself, does not impose a limitation on Plaintiffs' claims. As the Supreme Court has recognized, that is not dispositive. In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both. *Graham*, 473 U.S. at FN 14. "The course of proceedings" in such cases typically will indicate the nature of the liability sought to be imposed. *Id.* (quoting *Brandon v. Holt*, 469 U.S. 464, 469, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985)). Given the early stage of these proceedings, particularly in light of the fact that Defendants have yet to answer, the Court will deny Defendants' motion to dismiss in this regard. However, the Court notes that this denial will be without prejudice.

**CONCLUSION**

For the reasons hereinabove set forth, Defendants' Motion to Dismiss, Doc. No. 9, will be denied.  An appropriate order follows.


McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL A. DIPIPPA and MARY JANE )
DIPIPPA *individually and as the parents and* )
*natural guardians of J.D., a minor* )
                                        ) **2:11-cv-7**

               **Plaintiffs,** )

v )

UNION SCHOOL DISTRICT, LARRY )
BORNAK *Superintendent of the Union School* )
*District*, STEPHEN SHUTTERS )
*Principal of the Union High School* and SCOTT )
KINDEL *Athletic Director of the Union High* )
*School* )

              **Defendants.** )

## ORDER OF COURT

AND NOW, this 4th day of May, 2011, upon consideration of Defendants' MOTION TO

DISMISS, (Doc. No. 9), and the response in opposition thereto filed by Plaintiff (Doc. No. 11),

and in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED,**

**ADJUDGED,** and **DECREED** that Defendants' Motion to Dismiss is **DENIED.**  Defendants

are further ORDERED to file an answer to Plaintiffs' complaint on or before May 18, 2011.


                                            BY THE COURT:

                                            s/Terrence F. McVerry
                                            United States District Judge


cc:    **James J. Ross, Esquire**
          Email: jross@brf-law.com

          **Michael K. English, Esquire**
          Email: menglish@dmkcg-law.com